UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHRISTIAN PARRILLA,[1] | Case No. CV 15-8547-DFM |
| Petitioner, | OPINION AND ORDER |
| v. | |
| PEOPLE OF THE STATE OF CALIFORNIA, | |
| Respondent. | |

# I.

# BACKGROUND

**A.** <u>**Procedural History**</u>

In 2013, a jury convicted Cristian Parrilla ("Petitioner") of assault with a firearm and found true allegations that he had personally used a firearm, inflicted great bodily injury on his victim, and committed the assault for the

---

[1] Petitioner's last name is spelled "Parilla" in some filings, <u>see</u> Dkts. 1, 15, but based on other filings and the lodged documents, it appears that the correct spelling is "Parrilla." <u>See</u> Lodged Documents 1, 2, 6.

1 benefit of a criminal street gang. See 2 Clerk's Transcript ("CT") 288.[2] The trial court sentenced Petitioner to 24 years in state prison. See 4 Reporter's Transcript ("RT") 796-97.

Petitioner appealed, raising claims of ineffective assistance of counsel, insufficient evidence, instructional error, prosecutorial error, and sentencing error. See Lodged Document ("LD") 3. The California Court of Appeal affirmed the judgment. See LD 6. Petitioner filed a petition for review raising the same claims. See LD 7. On August 13, 2014, the California Supreme Court summarily denied review. See LD 8.

On November 2, 2015, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody in this Court, raising the same claims that were raised on direct appeal, except a subclaim that counsel was ineffective for failing to challenge the prosecutor's alleged vouching. See Dkt. 1 ("Petition"). On March 29, 2016, Respondent filed an Answer. See Dkt. 13 ("Answer"). Petitioner did not file a reply. Both parties consented to proceed before a United States Magistrate Judge. See Dkts. 12, 28.

Through his newly retained counsel, Petitioner filed new state habeas petitions, which were denied. See Appellate Cts. Case Information, http://appellatecases.courtinfo.ca.gov/search.cfm?dist=2 (search for Case Nos. B278627, S238472); Dkt. 27. This included a state habeas petition filed in Ventura County Superior Court on September 15, 2016, raising two new gang-enhancement claims. See Dkts. 19 at 2, 19-1. Petitioner moved to stay proceedings in this Court to exhaust his gang-enhancement claims, see Dkt. 19, moved to amend his Petition, see Dkt. 20, and moved to file his Proposed First Amended Petition, see Dkt. 20-1. This Court granted Petitioner's request

---

[2] With the exception of the Clerk's and Reporter's Transcripts, citations to the filed documents are to the CM/ECF pagination.

to file his Proposed First Amended Petition, denied his motion to stay, and denied his motion for leave to amend his Petition to add his new gang-enhancement claims. See Dkt. 30.

The First Amended Petition argues that (1) insufficient evidence supported the jury's finding that Petitioner was the shooter and (2) trial counsel was ineffective for failing to request jury instructions on factors affecting eyewitness identifications and the alibi defense, present expert testimony regarding eyewitness identification, or object to the prosecutor's improper vouching. See Dkt. 31 ("FAP"). Respondent filed an answer to the amended petition. See Dkt. 40 ("Supplemental Answer"). Petitioner filed a supplemental Traverse. See Dkt. 41 ("Supplemental Traverse").

**B.     Summary of the Evidence Presented at Trial**

The underlying facts are taken from the unpublished opinion of the California Court of Appeal. Unless rebutted by clear and convincing evidence, these facts are presumed correct. See Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008); 28 U.S.C. § 2254 (e)(1). Petitioner has not attempted to overcome the presumption with respect to the underlying facts.

> In the early morning of July 24, 2011, Justin Steele, a member of the tagging crew "DA," spray-painted graffiti on the side of a truck parked in the parking lot of Mi Puebilito market in Santa Paula. When he heard "fast paced" footsteps behind him, he dropped the paint can and ran across the parking lot. As he ran, he heard four gunshots and realized that he had been shot in the leg and foot. Steele entered the back door of a social hall and stated to the cleaning crew that he had been shot. The employees offered first aid and summoned emergency medical assistance.
>
> A neighbor heard the gunshots that morning and saw one person run into the social hall and another person, a thin man of

medium height, run away. Mi Puebilito market had outside surveillance cameras that recorded the parking lot shooting.

The recordings reflected a man tagging a truck in the parking lot by writing over existing graffiti. Another man approached, chased the tagger, and raised his right arm to shoot him. The recordings reflected "muzzle flashes" from the firearm. The victim fell and the shooter turned and ran away.

Santa Paula Police Officers Kenneth Clark, Matthew Alonzo, John Coffelt, and Hector Ramirez viewed the recordings and recognized [Petitioner] as the shooter, based upon their prior police contacts with him. At trial, the parties stipulated that [Petitioner] was an active member of the criminal street gang "12th Street Locos," and his moniker was "Krispy."

Alonzo testified that he had served as a gang investigator for the Santa Paula police department and knew [Petitioner] from three or four prior contacts. He stated that 12th Street Locos claimed the area of Mi Puebilito market. Alonzo opined that tagging by a rival gang member in the 12th Street Locos neighborhood "would be perceived as disrespect." The disrespect would invite an "immediate response," including criminal assault, which would benefit the criminal street gang.

On August 10, 2011, Ventura County sheriff's deputies searched [Petitioner's] residence pursuant to a search warrant. In his bedroom, they discovered gang graffiti and a newspaper article reporting the shooting of Steele.

[Petitioner's] friends and relatives testified at trial that, in their opinion, the man shooting at the tagger in the videorecording was not [Petitioner]. [Petitioner's] girlfriend also testified that he

4

spent the morning of the shooting with her at her nearby apartment.

The jury convicted [Petitioner] of assault with a firearm, and found that he personally used a firearm, inflicted great bodily injury upon his victim, and committed the crime to benefit a criminal street gang. The jury could not agree upon a charged count of attempted murder.

LD 6 at 1-2 (citations omitted).

## II.
## STANDARD OF REVIEW

Petitioner's claims are subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, federal courts may grant habeas relief to a state prisoner "with respect to any claim that was adjudicated on the merits in State court proceedings" only if that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Overall, AEDPA presents "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013). AEDPA presents "a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted). The prisoner bears the burden of showing that the state court's decision "was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). In other words, a state-court "determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness" of that ruling. Id. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Federal habeas corpus review therefore serves as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (citation omitted).

      Here, Petitioner raised his claims on direct appeal. See LD 3. The California Court of Appeal denied the sufficiency of evidence claim and a portion of the ineffective assistance of counsel claim in a reasoned decision without specifically addressing Petitioner's ineffective assistance claim regarding counsel's failure to present expert testimony and to object to the prosecutor's improper vouching for police officers. See LD 6 at 3-6. "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 568 U.S. 289, 301 (2013). Petitioner has failed to rebut that presumption. Thus, for purposes of applying the AEDPA standard of review, the California Court of Appeal decision on direct appeal constitutes the relevant state court adjudication on the merits. See Wilson v. Sellers, --- U.S. ---, 138 S. Ct. 1188, 1192 (2018) (holding that federal habeas court "look[s] through" summary denial of claim to last reasoned decision from state courts to address claim and "presume[s] that the unexplained decision adopted the same reasoning").

///

///

## III.
## DISCUSSION

**A.  Sufficiency of the Evidence Claims**

Petitioner argues that insufficient evidence supported his conviction for assault with a firearm. See FAP at 19.

**1.  Relevant Law**

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A federal habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). On direct review of a sufficiency of the evidence claim, a state court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Federal habeas relief is available only if the state-court determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of Jackson. Juan H., 408 F.3d at 1275 n.13.

Habeas claims based on allegedly insufficient evidence therefore "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam). As noted by the Supreme Court:

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas

review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

Id. (citations omitted).

The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. In performing a Jackson analysis, a jury's credibility determinations are "entitled to near-total deference." Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). When the factual record supports conflicting inferences, the federal court must presume that the trier of fact resolved the conflicts in favor of the prosecution, and it must defer to that resolution. See Jackson, 443 U.S. at 326.

Under California law, a conviction for assault with a deadly weapon requires proof that: "1. The defendant did an act with a firearm that by its nature would directly and probably result in the application of force to a person; 2. The defendant did that act willfully; 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [and] 4. When the defendant acted, he had the present ability to apply force with a firearm." 2 CT 244.

**2.    California Court of Appeal Opinion**

The California Court of Appeal reviewed Petitioner's sufficiency claim on direct appeal and held that "[s]ufficient evidence and reasonable inferences therefrom support the judgment." LD 6 at 5-6. In so holding, the state appellate court noted:

Four police officers reviewed the surveillance recording and

8

> photographs. The officers testified that they were confident that [Petitioner] was the man shooting the firearm in the recording, having had many prior contacts with him. The jury viewed the recording and the photographs and had them available for viewing during deliberations; they could also compare the recording and photographs to [Petitioner's] appearance at trial.
>
> Moreover, [Petitioner] possessed a "cleanly cut" copy of a newspaper article describing the shooting. Expert testimony established that Steele was painting over graffiti on a truck in a rival gang's territory. The parties stipulated at trial that [Petitioner] was an active member of the 12th Street Locos. Alonzo testified that the 12th Street Locos claimed the neighborhood around the Mi Puebilito market. Although another conclusion may be drawn from this evidence, we do not substitute our views for that of the trier of fact.

Id. (citation omitted).

### 3. Analysis

Petitioner contends that no rational juror could have found beyond a reasonable doubt that Petitioner was the shooter such that insufficient evidence supported his conviction. See FAP at 22-23. After viewing the evidence in the light most favorable to the prosecution, it is clear that a rational trier of fact could have found that Petitioner was the shooter.

Although there were no eyewitness identifications presented at trial, four police officers reviewed surveillance videos and photographs and identified Petitioner as the shooter. See, e.g., 1 RT 234-36, 2 RT 336-40, 365-66, 400-01. Officers Ramirez and Coffelt further testified that they were 100% confident in their identifications. See 2 RT 371, 401. And while Petitioner points to the limited amount of in-person contact that the officers had with him, Officer

Alonzo encountered Petitioner in person at least three times, Officer Coffelt met Petitioner five to ten times, and Officer Ramirez encountered Petitioner at least five times. See 2 RT 338, 375, 391. Moreover, the testimony of one witness may be sufficient to uphold a conviction—here, the prosecution presented four. See United States v. Larios, 640 F.2d 938, 940 (9th Cir. 1981); United States v. Foster, 243 F. App'x 315, 316 (9th Cir. 2007). Petitioner noted that Clark had spent only 30 minutes with Petitioner and Alonzo had spent only 10 minutes with Petitioner. See FAP at 23. However, the jury heard both of these facts during trial and apparently determined that the identifications were reliable nonetheless. See 1 RT 246, 2 RT 334-40, 345. Petitioner's claim that Coffelt and Ramirez had not seen Petitioner recently enough to reliably identify Petitioner is similarly meritless. Coffelt testified that he had seen Petitioner in person between five and ten times, but that the last time was one year before watching the video. See 2 RT 375-76. Ramirez testified that he had encountered Petitioner more than five times and that the last encounter was approximately one year before the shooting. See 2 RT 391, 409. Whether the officers' confidence in their identifications was reliable despite the brevity of the encounters was an issue that was properly left for the jury to consider. See Coleman, 566 U.S. at 651.

      The jury based its conclusions not only on the officers' testimony, by also on its own review of the shooting footage and booking photos. See 1 RT xxxviii (listing exhibits). As noted by the California Court of Appeal, the jury thus had the ability to compare those exhibits with Petitioner's appearance at trial. See LD 6 at 5-6. The jury also heard testimony from Petitioner's witnesses, who viewed the footage and photos and said that the shooter was not Petitioner. See 3 RT 490, 504, 510, 522. The fact that the jury credited the officers' testimony over Petitioner's family and friends' testimony does not demonstrate insufficient evidence.

Petitioner also argues that the California Court of Appeal relied too heavily on Petitioner's possession of a newspaper article about the shooting. See FAP at 25-26. The jury heard that officers found a neatly clipped newspaper article covering the shooting when searching Petitioner's bedroom. See 2 RT 353-57. They also heard defense witness Garibay testify that someone gave him a copy of the article to read and that he had thrown it away. See 3 RT 473, 556. Petitioner claims that this establishes that "others also possessed copies of the newspaper article" so that it did not have probative value of Petitioner's guilt. See FAP at 26. However, Petitioner's possession of the newspaper article was only one factor upon which the trial court, jury, and state appellate court relied when considering whether Petitioner was guilty. While Petitioner's counsel at trial may have attempted to show that Garibay also had a motive for the shooting, a reasonable juror could conclude that the evidence supported a finding that Petitioner, rather than any other person, committed the assault with a deadly weapon. The California Court of Appeal's rejection of Petitioner's sufficiency of evidence challenge was not objectively unreasonable.

Finally, Petitioner argues that the California Court of Appeal erred in finding that Petitioner's active gang member status was relevant to inferring Petitioner's motive. See FAP at 25-26. Petitioner argues that Steele spray-painting a rival gang's turf was "a conceivable motive . . . that . . . equally applied to the 100 or so other 12th Street Locos gang members as well as members of the ASK and KWS tagging crews." Id. at 26. However, the fact that multiple people could have possessed the same motive does not make Petitioner's gang affiliation irrelevant. The jury heard testimony that Petitioner's bedroom was covered in gang tags, graffiti, and stickers. See 2 RT 353-55. Considered alongside four officers' identifications, the jury's ability to watch surveillance footage and compare it to Petitioner's appearance at trial,

and the newspaper article found in Petitioner's bedroom, Petitioner's gang affiliation allowed the jury to reasonably infer Petitioner's guilt. The California Court of Appeal's finding that a rational trier of fact could have convicted Petitioner of assault with a firearm was thus not objectively unreasonable. Habeas relief is accordingly not warranted on Petitioner's claim that insufficient evidence supported his conviction of assault with a firearm against Steele.

**B.  Ineffective Assistance of Counsel**

Petitioner argues that trial counsel "rendered prejudicially ineffective assistance by not requesting jury instructions on factors affecting eyewitness identifications and the alibi defense, not presenting expert psychological testimony concerning factors affecting eyewitness identification, and not objecting to the prosecutor's improper vouching for police officers during argument." FAP at 5-6.

A petitioner claiming ineffective assistance of counsel must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). "Deficient performance" means unreasonable representation falling below professional norms prevailing at the time of trial. Id. at 688-89. To show deficient performance, the petitioner must overcome a strong presumption that his lawyer "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Further, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. The initial court considering the claim must then "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

To meet his burden of showing the distinctive kind of "prejudice"

required by Strickland, Petitioner must affirmatively "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court deciding a claim alleging ineffective assistance of counsel need not address both components of the inquiry if the petitioner makes an insufficient showing on one. See id. at 697.

In Harrington v. Richter, the Supreme Court reiterated that AEDPA requires an additional level of deference to a state-court decision rejecting an ineffective assistance of counsel claim: "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." 562 U.S. at 101. The Supreme Court further explained,

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. at 105 (citations omitted).

### 1. Failure to Request Jury Instructions

At trial, Petitioner's counsel did not request jury instructions regarding eyewitness identifications and alibi defenses. CALCRIM No. 315 instructs the

jury to consider several questions when evaluating eyewitness testimony identifying a defendant, such as whether the witness had contact with the defendant before the event, what circumstances affected the witness's ability to observe, and whether the witness ever failed to identify the defendant. See Judicial Council of California Criminal Jury Instruction No. 315. CALCRIM No. 3400 instructs the jury that if it has reasonable doubt about whether the defendant was present when the crime was committed, it must find him not guilty. See Judicial Council of California Criminal Jury Instruction No. 3400.

The California Court of Appeal determined that "[i]t is not reasonably probable that [Petitioner] would have obtained a more favorable outcome had counsel requested the two instructions." LD 6 at 4. The state appellate court noted that "neither instruction is required sua sponte," "the police officers who identified [Petitioner] were not eyewitnesses to the crime at the time it was committed," and "[t]he jurors were also able to compare the video and photographs with [Petitioner's] physical appearance at trial." Id.

The California Court of Appeal reasonably determined that Petitioner failed to establish that, but for counsel's failure to request CALCRIM Nos. 315 and 3400, Petitioner would not have been convicted for assault with a firearm. See Strickland, 466 U.S. at 694. Importantly, there were no eyewitness identifications at trial. The California Court of Appeal correctly noted that "the police officers who identified [Petitioner] were not eyewitnesses to the crime at the time it was committed." LD 6 at 4. As such, CALCRIM No. 315 was irrelevant at trial and would not have aided Petitioner's case. The jury did, however, receive the more relevant instruction, CALCRIM No. 226, regarding the credibility of witnesses. See 2 CT 229. This instructed the jury to consider how well the witness could "perceive the things about which the witness testified," and whether "the witness's testimony [was] influenced by a factor such as bias or prejudice." Id.

As for CALCRIM No. 3400, while counsel did not request an alibi defense instruction, Petitioner has not shown how this prejudiced him. The jury was properly instructed on how to evaluate conflicting evidence, see 2 CT 234, the prosecution's burden of proof, see 2 CT 224, and how to assess witness credibility, see 2 CT 229-30. Juries are presumed to follow the instructions given to them. See Weeks v. Angelone, 528 U.S. 225, 234 (2000). Thus, the jury is presumed to have understood that the prosecution was required to prove that, despite Petitioner's alibi and claim that he was not the shooter in the footage, the circumstantial evidence proved Petitioner's guilt beyond a reasonable doubt.

### 2. Failure to Present Expert Testimony

At trial, four officers testified that they were certain that Petitioner was the shooter based on video footage of the shooting and their past in-person encounters with Petitioner. See 1 RT 234-36, 2 RT 336-40, 365-66, 400-01. Petitioner claims that trial counsel erred by failing to present expert psychological testimony concerning the factors affecting eyewitness identification. See FAP at 32.

When a petitioner alleges that his counsel was ineffective in failing to call a particular witness, he generally must also state with particularity what the specific witness would have testified to and how that testimony might have altered the outcome of the trial. See United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987); United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984). At a minimum, a petitioner should present evidence that the uncalled witness would in fact have testified. See United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988). An affidavit or declaration from the prospective witness would typically suffice. See Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000).

Here, Petitioner has presented no declaration or other competent

evidence from any particular witness. Petitioner also provided no evidence that any expert witness could and would testify to the assertions made in his Petition regarding the psychological factors affecting eyewitness identification. To the extent that Petitioner intends to allege that an eyewitness identification expert witness may have helped his case, see FAP at 32-33, such a vague and conclusory claim is insufficient to establish ineffective assistance of counsel. See Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001); see also Dows, 211 F.3d at 486 (rejecting claim of ineffective assistance for failure to call witness in part because of lack of affidavit from witness regarding substance of testimony). Petitioner has not demonstrated that an eyewitness identification expert was available and willing to testify on Petitioner's behalf. Nor has he established the specific content of any such expert's testimony. Thus, Petitioner's mere "[s]peculation about what an expert could have said is not enough to establish prejudice." Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997).

Importantly, Petitioner does not indicate how an eyewitness identification expert would have been relevant to his case. There were no eyewitnesses testifying at Petitioner's trial. The only identifications were by people reviewing video footage of the shooting after it occurred. Additionally, eyewitness identification expert testimony "is strongly disfavored by most courts." United States v. Labansat, 94 F.3d 527, 530 (9th Cir. 1996) (citation and internal quotations omitted); Brown v. Terhune, 158 F. Supp. 2d 1050, 1071 (N.D. Cal. 2001), aff'd, 59 F. App'x 190 (9th Cir. 2003) (counsel not ineffective in failing to call eyewitness identification expert, where counsel cross-examined witnesses concerning identifications and emphasized alleged problems with identifications in closing). Instead, the Ninth Circuit has held that "skillful cross examination of eyewitnesses, coupled with appeals to the experience and common sense of jurors, will sufficiently alert jurors to specific

conditions that render a particular eyewitness identification unreliable." Howard v. Clark, 608 F.3d 563, 574 (9th Cir. 2010). Defense counsel thoroughly cross-examined the officers and emphasized that the officers had spent little time in person with Petitioner and that some had not seen Petitioner in over a year. See, e.g., 1 RT 246, 2 RT 334-40, 345, 375-76, 391, 409. Having cross-examined the witnesses extensively, counsel's failure to call an eyewitness identification expert was neither prejudicial nor unreasonable.

Finally, the record does not demonstrate that Petitioner has shown a reasonable probability that introduction of an eyewitness identification expert would have resulted in a different verdict. Even with the aid of an expert, four different individuals identified Petitioner as the shooter in surveillance footage, a newspaper article about the shooting was found in Petitioner's bedroom, and Petitioner was an active member of the gang whose turf Steele had spray painted.

### 3. Failure to Object to Prosecutor's Improper Vouching

In his closing argument, the prosecutor stated that unlike Petitioner's family and friends who testified on his behalf and have a "personal relationship interest in the outcome" of Petitioner's trial, "the police officers who testified . . . don't have an interest in the outcome. A lot of times defense attorneys will get up here and argue that they have some stake in how trials or cases are decided, and it is just asking you to speculate at best. Nothing that they are or who they become at the station or any promotion, none of it is based on the outcome of trials. They investigate crimes because it is their job." 4 RT 657-58. Petitioner argues that his counsel rendered ineffective assistance by failing to object to this statement. See FAP at 33-36.

Although the California Court of Appeal did not address Petitioner's ineffective assistance claim as to counsel's failure to object to improper vouching, it addressed the vouching claim in the context of prosecutorial error.

17

See LD 6 at 6-7. The state appellate court noted that under California law, a prosecutor may comment on a witness's credibility based on facts contained in the record and any reasonable inferences therefrom but may not vouch for his credibility based on evidence outside the record, personal knowledge, or personal belief. See id. (citing People v. Redd, 48 Cal. 4th 691, 740 (2010); People v. Medina, 11 Cal. 4th 694, 757 (1995)). The California Court of Appeal determined that "because the prosecutor's comments regarding the police officer witnesses were based upon facts established by their testimony and did not refer to evidence outside the record," the comments did not constitute vouching. See id. at 7.

As an initial matter, Petitioner's claim fails because he has not submitted a declaration from trial counsel stating his reasons for not objecting to the prosecutor's closing argument. See Gentry v. Sinclair, 705 F.3d 884, 899-900 (9th Cir. 2012) (as amended Jan. 15, 2013). Yet even if he had, Petitioner has not established a reasonable probability that a successful objection to this argument would have changed the jury's verdict. The prosecutor's closing argument was largely based on evidence in the record—namely, that the officers had encountered Petitioner several times and identified him while investigating crimes at work. Moreover, the jury heard overwhelming evidence supporting Petitioner's conviction. It heard four officers' identification of Petitioner, saw surveillance footage from the shooting, and could see Petitioner at trial and compare his in-person appearance with the person in the video and photographs. Moreover, the jury received instructions regarding the burden of proof, witness credibility, conflicting evidence, and lay opinion testimony. See 2 CT 224, 229-30, 234, 238. It is presumed that the jury followed all instructions. See Weeks, 528 U.S. at 234. Given the overwhelming evidence supporting Petitioner's guilt, any improper reference to information outside the record did not result in actual prejudice. Thus, habeas relief on this ground is

not warranted.

## IV.
## CONCLUSION

IT IS THEREFORE ORDERED that the First Amended Petition is DENIED. Let judgment be entered dismissing this action with prejudice.

Dated: June 6, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge